# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| VICTOR BALTIMORE ) | |
| ) | |
| Plaintiff, ) | Case No. 10 C 1031 |
| v. ) | |
| ) | Judge Ronald A. Guzmán |
| ILLINOIS DEPARTMENT OF CHILDREN ) | |
| AND FAMILY SERVICES, AUNT MARTHA'S ) | |
| YOUTH SERVICE CENTER, INC., ERWIN ) | |
| McEWEN, Director of DCFS, ROBERTA ) | |
| VANORSBY, an Individual, OBECKYO ) | |
| QUINN-MIMS, an Individual, and DENISE ) | |
| HUGHES-BENSON, an Individual ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Victor Baltimore ("Baltimore") is suing defendants Illinois Department of Children and Family Services ("DCFS") and Erwin McEwen ("McEwen"), director of DCFS, for equitable relief regarding deprivation of his rights secured by the U.S. and Illinois constitutions and laws. DCFS and McEwen have moved to dismiss all counts of the complaint against them pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6). For the reasons provided in this Memorandum Opinion and Order, the Court grants defendants DCFS and McEwen's motion to dismiss all claims against them and dismisses the claims without prejudice for lack of jurisdiction.[1]

---

[1] Because the Court holds that it lacks jurisdiction over Baltimore's federal and state law claims against DCFS and McEwen, it need not, and more importantly, must not, address defendants' Rule 12(b)(6) motion.

**Facts**

The complaint alleges that on July 21, 2008, Baltimore was awarded full custody of his three minor children. (Am. Compl. ¶ 12.) Baltimore alleges that on March 4, 2009, the named defendants and/or their agents removed his children from school without prior notice to him and placed the children in protective custody. (*Id.* ¶ 16.) The reason given by one of the other defendants for the seizure was that Baltimore's fiancée at the time had been in a prior abusive relationship, which required an investigation of her previous relationship by DCFS. (*Id.* ¶ 17.) However, Baltimore argues that this reason is false and alleges an alternative reason—that the defendants discovered a complaint against him for improper touching nearly twenty years ago. (*Id.* ¶ 18.) Baltimore alleges that subsequent to the removal of his children from his custody, he underwent psychological evaluations and was unable to visit his children while they were in foster care. (*Id.* ¶ 19.) He also retained a lawyer at his expense to recover custody of his children. (*Id.* ¶ 21.) He further alleges he recovered custody on May 21, 2009, and has remained in full custody since that time. (*Id.* ¶ 25.)

In Counts I, II and III, Baltimore sues DCFS and McEwen in his official capacity under 42 U.S.C. §§ 1983 and 1985.[2] Count IV is a state law "false light" tort claim. The relief Baltimore seeks against McEwen and DCFS for each claim is a preliminary and permanent injunction to prevent DCFS or its agents from placing his children in protective custody again without first conducting a due process hearing or having a good

---

[2] In Count I, Baltimore alleges that DCFS and McEwen deprived him of his Fourth, Fifth, and Fourteenth Amendment Rights in violation of 42 U.S.C. § 1983. In Count II, Baltimore alleges that, in violation of 42 U.S.C. §§ 1983 and 1985, DCFS and McEwen conspired to deprive him of those rights. In Count III, Baltimore alleges that, in violation of 42 U.S.C. § 1983, DCFS and McEwen failed to properly instruct, supervise, and control individual defendants Roberta Vanorsby, Obeckyo Quinn-Mims, and Denise Hughes-Benson, which resulted in a violation of Baltimore's due process rights.

faith belief that the children are in imminent danger of abuse or neglect. No money damages are being sought from either DCFS or McEwen.

## Discussion

When moving to dismiss pursuant to Rule 12(b)(1), a defendant may attack subject matter jurisdiction in two ways: a facial attack, which challenges jurisdiction based upon the sufficiency of the complaint's allegations, or a factual attack, which challenges the factual basis of the court's subject matter jurisdiction. *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993). When a defendant makes a facial attack, the "allegations are taken as true and construed in a light most favorable to the complainant." *Id.* When making a factual attack, "the allegations in the complaint are not controlling, and only uncontroverted factual allegations are accepted as true for purposes of the motion." *Id.* (citations omitted).

Here, defendants launch a facial attack on jurisdiction because they argue, without contesting any of the alleged facts, that the Eleventh Amendment bars this action against DCFS and McEwen. Furthermore, the defendants argue that Illinois state law precludes this Court's jurisdiction over the state law tort claim. The Court addresses the federal and state law claims in turn.

### I. Federal Claims

Defendants DCFS and McEwen have moved to dismiss Baltimore's federal claims and argue that the Eleventh Amendment bars Baltimore's alleged §§ 1983 and 1985 claims. Although the Eleventh Amendment acts as a jurisdictional bar, it is not

3

truly jurisdictional. *Benning v. Bd. of Regents of Regency Univs.*, 928 F.2d 775, 777 n.2 (7th Cir. 1991) (deciding the case on jurisdictional grounds other than the Eleventh Amendment because the Eleventh Amendment's bar, unlike other forms of subject matter jurisdiction, may be waived and need not be raised by the court); *see, e.g.*, *Vt. Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 779 (2000) (allowing Rule 12(b)(6) motion as to whether a statute provided for any cause of action before addressing whether any cause of action under the statute would be barred by the Eleventh Amendment). Therefore, this Court shall first satisfy itself, before addressing the issue of the Eleventh Amendment, whether it otherwise has subject matter jurisdiction over any of the claims. *Illinois v. City of Chi.*, 137 F.3d 474, 478 (7th Cir. 1998) ("Subject matter jurisdiction is the first question in every case, and if the court concludes that it lacks jurisdiction it must proceed no further.").

"It is well established . . . that before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue." *Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990). Under Article III, federal courts have jurisdiction "over only 'cases and controversies,' and the doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process." *Id.* at 154–55. Standing requires that a plaintiff establish three elements: (1) an injury in fact that is (a) concrete and particularized and (b) actual or imminent, as opposed to conjectural or hypothetical; (2) a causal connection between the injury and the challenged action; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *Sierra Club v. Franklin Cnty. Power of Ill., LLC*, 546 F.3d 918, 925 (7th Cir. 2008).

"Because standing is an essential and unchanging part of the case-or-controversy requirement of Article III, . . . [a court] must consider this jurisdictional issue even though the parties have not raised it." *Shirmer v. Nagode*, 621 F.3d 581, 584 (7th Cir. 2010) (quotation and citation omitted).

Regarding prospective future injury, "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury." *O'Shea v. Littleton*, 414 U.S. 448, 496 (1974). However, allegations of future injury turn upon the likelihood of imminent harm. *Id.*; *Mainstreet Org. of Realtors v. Calumet City, Ill.*, 505 F.3d 742, 745 (7th Cir. 2007) (requiring a "reasonable probability" of suffering some tangible harm to support standing to sue); *Sierakowski v. Ryan*, 223 F.3d 440, 443 (7th Cir. 2000) ("[A] plaintiff in search of prospective equitable relief must show a significant likelihood and immediacy of sustaining some direct injury.").

Illustrative of Baltimore's prayer for injunctive relief is the Supreme Court's decision in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). In *Lyons*, the complainant Lyons was stopped by Los Angeles police officers for a traffic or vehicle violation, and during the stop the police officers—without provocation or justification—applied a control "chokehold" to Lyons, causing injury. *Id.* at 97–98. Lyons brought suit against the officers and the city seeking damages, but he also sought a preliminary and permanent injunction against the City to bar the use of control chokeholds by police officers. *Id.* at 98. Relying on the Court's precedent in *O'Shea v. Littleton*, the Supreme Court held that Lyons did not present a case or controversy, and therefore plaintiff had no standing to sue the City for prospective injunctive relief. *Id.* at 105. The Court explained:

> Lyons' standing to seek the injunction requested depended on whether he was likely to suffer future injury from the use of the chokeholds by police officers. Count V of the complaint alleged the traffic stop and choking incident five months before. That Lyons may have been illegally choked by the police on October 6, 1976 . . . does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part.

*Id.* Furthermore, the Court held that the additional allegation that police officers "routinely appl[ied] chokeholds in situations where they [were] not threatened by the use of deadly force" did nothing more to create a case or controversy. *Id.* In order for Lyons to succeed on his claim for equitable relief, he would first have had to allege that he would have another encounter with Los Angeles police officers. *Id.* at 105–06. Moreover, Lyons either would have had to allege "that *all* police officers *always* choke any citizen" when arresting, citing, or questioning the citizen, or that "the City ordered or authorized police officers to act in such manner." *Id.* at 106. Because he did not do either, "[t]he speculative nature of Lyons' claim of future injury" did not meet the standard for equitable relief espoused in *O'Shea*: a likelihood of substantial and immediate irreparable injury. *Id.* at 110–11.

This Circuit has recently applied *Lyons* in *Shirmer v. Nagode*, 621 F.3d at 582. In *Shirmer*, the plaintiffs sought to enjoin a city of Chicago ordinance that made it a crime for a person, when ordered by a police officer, to fail to disperse when others were engaging in disorderly conduct nearby. *Id.* The plaintiffs were arrested for failure to disperse pursuant to the ordinance, but the trial court record did not show any disorderly conduct in the vicinity of the plaintiffs at the time of their arrest. *Id.* at 583. The Court of Appeals held that in order to sue for an injunction, the plaintiffs had to make a

6

separate demonstration of standing with regard to future injury. *Id.* at 585. "The relevant question for [the court's] purposes . . . [was] whether these plaintiffs [had] sufficient reason to fear such arrest and prosecution as to justify a federal judicial decision on the facial validity of the law." *Id.* The *Shirmer* court concluded that the plaintiffs did not, citing *Lyons* for the general rule that "the fact that a person was previously prosecuted for violating a law is insufficient by itself to establish that person's standing to request injunctive relief." *Id.* 585–86.

In contrast to *Shirmer* and *Lyons*, in *E.Z. v. Coler*, 603 F. Supp. 1546, 1551 (N.D. Ill. 1985), the court held that parents and their minor children had standing to sue DCFS to enjoin the agency from conducting searches of minor children without parental consent or without probable cause, and from conducting searches of residences of children and their parents or legal guardians without consent or cause. The court held that the plaintiffs, who were subject to child abuse investigations by DCFS, had standing because they could "credibly allege that the practice [they were] challenging *always* occur[red] and that plaintiff[s] ha[d] a realistic chance of being subject[ed] to the practice." *Id.* (emphasis added). The claim was not speculative because the plaintiffs alleged they had been subjected to unconstitutional investigations by DCFS in the past, that DCFS would conduct its practices in the same manner in the future, and therefore plaintiffs would be subjected to unconstitutional practices when investigated in the future. *Id.*

Turning to the case at hand, Baltimore has alleged past injury, just as the plaintiffs in *Lyons* and *Shirmer* did. However, without sufficient allegations that *future* injury is imminent, plaintiff has no standing to seek prospective equitable relief. With

regard to future injury, the complaint is wholly speculative. The complaint merely states that harm will result *if* the children are taken into protective custody by DCFS again, but nothing about *why* they will be taken again. This conjectural injury is Baltimore's basis for his prayer for relief—an injunction requiring that the plaintiff's children not be taken from his custody in the future without a due process hearing or a good faith belief that the children are in imminent danger of abuse or neglect. Similar to the shortcomings of the plaintiffs in *Lyons* and *Shirmer*, Baltimore's previous injury alone does not establish that the injury will occur again in the future. Moreover, Baltimore's case is dissimilar to the plaintiffs' case in *Coler* because Baltimore does not allege that his injury was caused by actions taken pursuant to DCFS policy, and Baltimore has provided no allegation that he will have a future encounter with DCFS, much less that DCFS will violate his rights again.

In order to establish standing, Baltimore must allege some reason why he likely will be in future contact with DCFS and some reason why his injury will likely be repeated, such as a DCFS policy that would invariably lead to a violation of his rights. Even taking all the alleged facts in the light most favorable to Baltimore, he has not alleged either. The amended complaint states that DCFS policy mandated that children could be taken into temporary protective custody without the consent of the person responsible for the child's welfare *only if* there is reason to believe the child is in immediate danger and there is no time to file a petition in court. The complaint explicitly alleges that the removal of Baltimore's children was in derogation of this DCFS policy and alleges that the supervisory defendant at DCFS, *i.e.*, McEwen—failed to direct and control DCFS agents properly in accordance with this policy. Baltimore's children have

remained in custody since they were returned to him, and although he may suffer injury if DCFS ever deprived him of custody again, DCFS and McEwen pose no immediate threat sufficient to establish the standing necessary for a case or controversy.[3]

For the aforementioned reasons, Baltimore lacks standing to sue DCFS and McEwen in his official capacity for prospective injunctive relief. Because Baltimore seeks only prospective relief against these defendants, DCFS and McEwen's Rule 12(b)(1) motion to dismiss is granted, and the Court dismisses without prejudice the three federal claims against DCFS and McEwen.

**II.    State Law Claim**

DCFS and McEwen argue that if the federal counts against them are dismissed, as this Court has done, the Court should dismiss the state law "false light" claim against them either because of the lack of supplemental jurisdiction or because jurisdiction is precluded by Illinois law. Because the Court finds that Illinois law has conferred exclusive jurisdiction for state law claims against Illinois to the Illinois Court of Claims, and because the Court must apply Illinois substantive law, there is no need to address whether dismissal of the federal claims against DCFS and McEwen would destroy supplemental jurisdiction over them.

---

[3] Although this opinion found no case or controversy on the basis of standing, the doctrine of ripeness may also apply. *Nelson v. Milwaukee Cnty*, No. 04 C 0193, 2006 WL 290510, at *3 n.9 (E.D. Wis. Feb. 7, 2006) ("Whether plaintiffs allege an injury sufficiently imminent to support standing might also be analyzed as a question of ripeness."). The doctrines of standing and ripeness are closely related. *Smith v. Wis. Dep't of Agric., Trade & Consumer Prot.*, 23 F.3d 1134, 1141 (7th Cir. 1994). In a case alleging prospective injury, they "perhaps overlap entirely." *Id.* When confronting prospective injury, a court could just as well tell a plaintiff they have suffered no injury, *i.e.*, the plaintiff has no standing, as the plaintiff has suffered no injury *yet*, and therefore the claim is not ripe. *Id.*

9

"Under the *Erie* doctrine, state rules of immunity govern actions in federal court alleging violations of state law." *Benning*, 928 F.2d at 777; *Magdziak v. Byrd*, 96 F.3d 1045, 1048 (7th Cir. 1996). In Illinois, the legislature has effectively provided for state immunity by conferring exclusive jurisdiction over all claims founded upon Illinois law against the state of Illinois with the Illinois Court of Claims. 705 Ill. Comp. Stat. 505/8(a);[4] *see Magdziak*, 96 F.3d at 1048 (noting that the starting point in Illinois for state rules of immunity begin with the Illinois Court of Claims Act). In Illinois, state law claims against state agencies are treated as claims against the state. *Brandon v. Bonell*, 368 Ill. App. 3d 492, 510 (2d Dist. 2006) (a judgment against a state agency is a judgment against the State). As for claims against state officials, official capacity suits in Illinois against state officials are considered suits against the state and are therefore subject to the exclusive jurisdiction of the Court of Claims. *Nelson v. Miller,* 570 F.3d 678, 885 (7th Cir. 2009) ("We have also recognized that Illinois courts treat suits against a public employee in his official capacity as suits against the state.").

In *Benning v. Board of Regents of Regency Universities*, the court held that Illinois law "specifically oust[ed] both state and federal courts of jurisdiction over all tort suits against the Board of Regents, conferring exclusive jurisdiction upon the Illinois Court of Claims." 928 F.2d at 778. Likewise, the *Magdziak* court, in affirming the dismissal of the claim, found that the Illinois Court of Claims Act provided that the plaintiff could only file suit against the defendant in the Illinois Court of Claims because

---

[4]705 Ill. Comp. Stat. 505/8 reads, in part:
    The [Court of Claims] shall have exclusive jurisdiction to hear and determine the following matters:
        (a) All claims against the State founded upon any law of the State of Illinois or upon any regulation adopted thereunder by an executive or administrative officer or agency . . . .

the defendant was a state official whose duty, allegedly breached, was imposed solely by virtue of his state employment. 96 F.3d at 1048-49. Thus, state law tort claims that are brought against the state of Illinois in federal court shall be dismissed for lack of subject matter jurisdiction. *Id.* at 1048; *Benning*, 928 F.2d at 778.

DCFS is a valid state agency created pursuant to 20 Ill. Comp. Stat. 5/1. *See Darryl H. v. Coler*, 801 F.2d 893, 907 (7th Cir. 1986) ("The DCFS is a state agency; it was established by state statute and is funded by the state."). Baltimore's state law tort claim against DCFS is therefore a claim against the state that he must bring in the Illinois Court of Claims. Likewise, McEwen is being sued in his official capacity as a state official, and therefore the claim against him is treated as a claim against the state. Because Illinois law confers exclusive jurisdiction with the Illinois Court of Claims, this Court lacks jurisdiction over the state law claim against DCFS and McEwen.

The Court grants DCFS and McEwen's motion to dismiss Count IV, and Count IV is dismissed as to them without prejudice pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

### Conclusion

For the foregoing reasons, the Court grants defendants DCFS and McEwen's motion to dismiss all claims against them pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. All claims against all other defendants remain.

**SO ORDERED**     **ENTERED: March 25, 2011**

_____
**HON. RONALD A. GUZMAN**
**United States Judge**

11